IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSE FRANCISCO AVELAR RAMOS,

       Petitioner,

                v.                              Civil Action No. 3:26-cv-112

PAMELA JO BONDI, *et al.*,

       Respondents.

**MEMORANDUM OPINION**

This matter comes before the Court on Petitioner Jose Francisco Avelar Ramos'

("Petitioner") Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the

"Amended Petition"). (ECF No. 6.) In the Amended Petition, Mr. Avelar Ramos challenges his

detention by Immigration and Customs Enforcement ("ICE"), arguing that ICE's failure to

provide him with a bond hearing under 8 U.S.C. § 1226 violates his statutory right to such a

hearing and his constitutional right to due process under the Fifth Amendment to the United

States Constitution.[1]   (ECF No. 6 ¶¶ 59–65.)

For the reasons articulated below, the Court will grant the Amended Petition. (ECF No.

6.) The Court will order Respondents to provide Mr. Avelar Ramos with a bond hearing under

8 U.S.C. § 1226(a).

---

[1] The Fifth Amendment to the United States Constitution provides, in pertinent part:

No person shall . . . be deprived of life, liberty or property without due
process of law.

U.S. Const. amend. V.

## I.  Factual and Procedural Background

### A.    Factual Background[2]

Mr. Avelar Ramos is a citizen of El Salvador.  (ECF No. 6 ¶ 18.)  He has resided in the

United States since 2004.  (ECF No. 6 ¶ 48.)  Mr. Avelar Ramos "is the financial provider for his

partner.  His adult daughter was granted affirmative asylum in 2018.  He is also the grandfather

of a U.S. citizen."  (ECF No. 6 ¶ 48.)  Petitioner "has no significant criminal history in his

twenty-two years in the United States."  (ECF No. 6 ¶ 49.)  On December 27, 2025, ICE officials

arrested Mr. Avelar Ramos, and he has remained in ICE custody at the Farmville Detention

Center since.  (ECF No. 6 ¶¶ 18, 49.)  The Immigration Court denied Petitioner bond applying

the Board of Immigration Appeals' controlling decision in *Matter of Yajure Hurtado*,[3] 29 I&N

Dec. 216 (BIA 2025).  (ECF No. 6 ¶¶ 53–55.)

### B.    Procedural Background

On February 11, 2026, Mr. Avelar Ramos filed a petition for a writ of habeas corpus

under 28 U.S.C. § 2241.  (ECF No. 1.)  The Court ordered Mr. Avelar Ramos to file an amended

---

[2] As discussed below, the Court proceeds by dispelling with additional briefing and incorporating Respondents' filings in this Court's decision in *Duarte Escobar v. Perry, et al.*, 3:25-cv-758 (MHL) (E.D. Va.).  Respondents have recently represented to the Court that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in *Duarte Escobar*."  (ECF No. 10, at 1.)  Accordingly, the Court's recitation of the factual background relies on the facts as alleged in the Amended Petition.

[3] On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*.  "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)."  *Soto v. Soto*, —F. Supp. 3d—, 2025 WL 2976572, at *1 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

petition in compliance with Rule 2(c)(5) of the Rules Governing Section 2254 Cases.[4]  (ECF No.

3.)  On February 20, 2026, Mr. Avelar Ramos filed the instant Amended Petition in accordance

with habeas Rule 2(c)(5).  (ECF No. 6.)  After observing that Mr. Avelar Ramos had been

ordered removed from the United States by an Immigration Judge, the Court ordered Petitioner

to explain why his petition was not rendered moot by that removal determination.  (ECF No. 7.)

Mr. Avelar Ramos responded that because his order of removal was not yet administratively

final, the Court could rule on his Amended Petition.  (ECF No. 8.)  The Court agreed and ordered

briefing on the merits of the Amended Petition.  (ECF No. 9.)

On February 24, 2026, the Court ordered Respondents to file a notice indicating whether

the factual and legal issues presented in the Amended Petition differ in any material fashion from

those presented in *Duarte Escobar v. Perry, et al.*, 807 F. Supp. 3d 564 (E.D. Va. 2025).  (ECF

No. 9.)  The Court further ordered that, if Respondents indicated that the factual and legal issues

presented in the Amended Petition do not differ in any material fashion from those presented in

*Duarte Escobar*, "each of the substantive filings in [*Duarte Escobar* would] be incorporated into

this habeas proceeding, and this Court [would] issue a ruling without further filings from the

parties."  (ECF No. 9, at 1–2.)

On February 25, 2026, Respondents filed a response to the Court's February 24, 2026

Order.  (ECF No. 10.)  In their response, Respondents "submit that the factual and legal issues

presented in the instant habeas petition do not differ in any material fashion from those presented

in *Duarte Escobar*[.]"  (ECF No. 10, at 1.)  "[C]onsistent with [the Court's] recent order,"

---

[4] Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241.  Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

Respondents contend that "this Court should incorporate the filings in *Duarte Escobar* into the record of this habeas action." (ECF No. 10, at 1.)

The Court therefore incorporates the filings in *Duarte Escobar* into the record. Specifically, the Court incorporates the parties' merits briefing in *Duarte Escobar* into the record. *See Duarte Escobar*, No. 3:25-cv-758 (MHL), ECF Nos. 16, 18, 19, 20 (E.D. Va.). The Court also dispels with any further briefing by the parties.

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

The central question posed in Mr. Avelar Ramos' Petition is whether he is entitled to a discretionary bond hearing under 8 U.S.C. § 1226(a)[5] or whether he is subject to the mandatory

---

[5] 8 U.S.C. § 1226 provides, in relevant part:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

   (1) may continue to detain the arrested alien; and

   (2) may release the alien on—

detention provision of 8 U.S.C. § 1225(b)(2)(A).[6]  Petitioner contends that 8 U.S.C. § 1226

entitles him to a bond hearing.  Specifically, Mr. Avelar Ramos argues that (1) the discretionary

detention provisions of 8 U.S.C. § 1226(a) entitle him to a bond hearing, (ECF No. 6 ¶¶ 59–61);

and (2) that his Fifth Amendment due process rights bolster his entitlement to such a hearing,

(ECF No. 6 ¶¶ 62–65).

In opposition, Respondents rely on their arguments incorporated by this Court from

*Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025).[7]  Here, as in *Duarte Escobar*,

---

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole.

8 U.S.C. § 1226(a)(1)–(2).

[6] 8 U.S.C. § 1225 provides, in pertinent part:

(b) Inspection of applicants for admission

(2) Inspection of other aliens

(A) In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

[7] Respondents' arguments have also been raised and decided throughout the country.  The vast majority of courts addressing this issue have concluded that 8 U.S.C. § 1226(a) pertains, meaning petitioners like Mr. Avelar Ramos should receive a bond hearing.  *See Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here").

Respondents insist (1) that the Court lacks jurisdiction over the Amended Petition by virtue of two jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA"), (*Duarte Escobar*, ECF No. 18, at 7–8); (2) that even if the Court has jurisdiction over the Amended Petition, Mr. Avelar Ramos' detention is lawful under 8 U.S.C. § 1225's mandatory detention provisions, (*Duarte Escobar*, ECF No. 18, at 8–20); and (3) that Mr. Avelar Ramos' constitutional due process rights have not been violated, (*Duarte Escobar*, ECF No. 18, at 20–28).[8]

The parties' arguments as to all challenges raised are substantially similar to others made in recent § 2241 habeas actions in the Eastern District of Virginia, including seven cases decided by this Court. *See Duarte Escobar*, 807 F. Supp. 3d 564; *Perez-Gomez v. Warden*, 3:25-cv-773

---

In addition, dozens of courts in the Eastern District of Virginia (including this Court) have rejected Respondents' position on eminently sound bases. *See Velasquez v. Noem*, No. 3:25-cv-998 (MHL), 2026 WL 279226, at *4 n.14 (E.D. Va. Feb. 3, 2026) (collecting thirty cases rejecting Respondents' argument in this District alone).

A small minority of district courts have accepted Respondents' arguments. *See, e.g.*, *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025); *Vargas Lopez v. Trump*, — F. Supp. 3d —, 2025 WL 2780351, at *7–10 (D. Neb. 2025). These decisions do not alter this Court's determination.

Recently, the United States Court of Appeals for the Fifth Circuit joined these courts. *See Buenrostro-Mendez v. Bondi*, — F.4th—, 2026 WL 323330 (5th Cir. 2026). The Fifth Circuit's decision is not binding here. *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's reasoning for many of the reasons cogently set forth in Judge Douglas' dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent.

[8] Respondents, in their arguments as incorporated from *Duarte Escobar*, do not argue that Mr. Avelar Ramos has failed to exhaust his administrative remedies, and they therefore waive any argument on this point. The Court notes, however, that even had Respondents raised an exhaustion defense, they would not prevail, because exhausting Mr. Avelar Ramos' administrative remedies prior to filing his Amended Petition would be futile. *See Duarte Escobar*, 807 F. Supp. 3d at 572.

(MHL), 2025 WL 3141103 (E.D. Va. Nov. 10, 2025) (rejecting the same arguments made in

*Duarte Escobar*); *Contreras-Perez v. Noem*, No. 3:25-cv-882 (MHL), 2025 WL 3281774 (E.D.

Va. Nov. 25, 2025) (same); *Campos Flores v. Bondi*, No. 3:25-cv-797 (MHL), 2025 WL

3461551 (E.D. Va. Dec. 2, 2025) (same); *Velasquez v. Noem*, 3:26-cv-998 (MHL), 2026 WL

279226 (E.D. Va. Feb. 3, 2026) (same); *Lopez-Diaz v. Crawford*, 3:25-cv-1039 (MHL) (E.D. Va.

Jan. 23, 2026) (same); *Espinoza Camacho v. Perry*, 3:26-cv-76 (MHL) (E.D. Va. Feb. 15, 2026)

(same).  Respondents raise no new arguments that would compel a different outcome.

> The Court concludes that 8 U.S.C. § 1226(a) and the Fifth Amendment entitle Mr. Avelar

Ramos to a bond hearing.  Accordingly, the Court will grant the Amended Petition.

### A.    The Court Has Jurisdiction Over the Amended Petition

> As a threshold matter, this Court has jurisdiction to consider Mr. Avelar Ramos'

Amended Petition.  Respondents argue that the Court lacks subject-matter jurisdiction over the

Amended Petition because two provisions of the INA strip the Court of jurisdiction over the

Amended Petition: 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g).  (*Duarte Escobar*, ECF No.

18, at 7–8.)

> As this Court held in *Duarte Escobar*, neither 8 U.S.C. §§ 1252(b)(9)[9] nor 1252(g)[10]

divests this Court of jurisdiction under 28 U.S.C. § 2241 to review Mr. Avelar Ramos' Amended

Petition. *Duarte Escobar*, 807 F. Supp. 3d at 572–75; *see also Luna Quispe*, 2025 WL 2783799,

---

[9] For instance, 8 U.S.C. § 1252(b)(9) does not divest this Court of its habeas jurisdiction because Mr. Avelar Ramos does not seek review of a removal order.  *Duarte Escobar*, 807 F. Supp. 3d at 573–74 (citing *Jennings v. Rodriguez*, 583 U.S. 294–95 (2018) (plurality opinion)).

[10] 8 U.S.C. § 1252(g) likewise does not divest the Court of its habeas jurisdiction because this case does not involve commencement, adjudication, or execution of any immigration order. *Duarte Escobar*, 807 F. Supp. 3d at 574–75 ("[Section] 1252(g) does not apply 'to *all* claims arising from deportation proceedings.'" (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis added))).

at *2–3.  The Court has jurisdiction to consider the merits of the Amended Petition and proceeds to the substance of Mr. Avelar Ramos' claim.

**B.    Mr. Avelar Ramos is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226**

With respect to the substance of Petitioner's claim, Mr. Avelar Ramos argues that his detention is governed by the discretionary detention provisions of § 1226 rather than the mandatory detention provisions in § 1225(b)(2).  (ECF No. 6 ¶¶ 59–61.)  According to Respondents, Mr. Avelar Ramos' detention is lawful under the INA because Mr. Avelar Ramos was not legally granted entry into the country and is therefore an "applicant for admission," meaning § 1225(b)(2) governs his detention.  (*Duarte Escobar*, ECF No. 18, at 8–20.)

For the reasons stated by this Court in *Duarte Escobar*, as well as the dozens of other decisions issued by Courts in this District on the same issue, this Court concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures.  807 F. Supp. 2d at 575–81.  This argument fails.

Mr. Avelar Ramos has been present in the United States since 2014.  He is thus not an "applicant for admission" subject to the mandatory detention provisions of § 1225 but rather falls within the discretionary detention provisions of § 1226(a) governing aliens who are already in the country.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288–90, 303 (2018) (finding that § 1226(a) is the "default rule" governing "aliens already in the country" whereas § 1225 governs "aliens seeking admission into the country").[11]  For the reasons set out in *Duarte Escobar*, the

---

[11] The Court observes that, for decades, "Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025).  But on July 8, 2025, "Acting Director of U.S. Immigration and Customs Enforcement, Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'" by determining that "[the mandatory detention provisions of section 1225] of the Immigration and Nationality Act (INA), rather than [the discretionary detention provisions of section 1226], is the applicable immigration detention

plain text of the INA,[12] Supreme Court precedent, district court decisions around the country, and decades of practice support this conclusion. 807 F. Supp. 3d at 575–81. Petitioner is therefore entitled to a bond hearing under § 1226(a) and its implementing regulations.

C.    **Mr. Avelar Ramos' Fifth Amendment Due Process Rights Have Been Violated**

Finally, Petitioner argues that his detention without a bond hearing violates his due process rights under the Fifth Amendment's Due Process Clause. (ECF No. 6 ¶ 62–65.)

---

authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 217–18 (D. Mass 2025). The July memorandum characterized, seemingly for the first time, all noncitizens who entered the United States without inspection as doing so "seeking admission," no matter how much time passed between their entrance into the United States and their apprehension by law enforcement.

On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado* in line with Acting Director Lyons' memorandum. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *1 (D.N.J. Oct. 22, 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

The Court owes the BIA no deference in its interpretation of the INA and interprets §§ 1225 and 1226 *de novo*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395–96 (2024). Indeed, the United States District Court for the Central District of California recently issued a nationwide declaratory judgment and vacatur under the Administrative Procedure Act against ICE's internal policy mandating that immigration detainees remain detained without a bond hearing. *Bautista v. Santacruz*, —F. Supp. 3d—, 2025 WL 3713987 (C.D. Cal. 2025). In doing so, the *Bautista* court found that *Matter of Yajure Hurtado* cannot be *controlling* law because it relies on a faulty statutory analysis, which *Bautista* rejected. *Id.* at *12; *see also Duarte Escobar*, 807 F. Supp. 3d at 580. The same is true here.

[12] As this Court explained in *Duarte Escobar*, § 1225 requires that an applicant be "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2). The statute's use of active language suggests that an alien must be taking *active* steps towards "seeking admission" to the United States. Presence in the country is not enough. *Duarte Escobar*, 807 F. Supp. 3d at 576. To find otherwise, as Respondents (again) ask this Court to do, would render other provisions of the INA superfluous. *Id.* at *9–10.

Respondents contend that Petitioner's due process rights are governed only by the INA, rather than the Fifth Amendment's Due Process Clause, and that even if Petitioner is subject to the Fifth Amendment's Due Process protections, denying him a bond hearing does not violate his constitutional rights.

For the reasons articulated in *Duarte Escobar*, the Court finds that Mr. Avelar Ramos' due process rights are governed by the Fifth Amendment and that his continued detention under 8 U.S.C. § 1225 without a bond hearing violates his due process rights. 807 F. Supp. 3d at 581–84. Specifically, the Court finds that all three *Mathews* factors weigh in Mr. Avelar Ramos' favor: (1) he has a strong private interest in remaining free from physical detention; (2) there is a significant risk of erroneous deprivation of his due process rights because he is entitled to a bond hearing under § 1226(a) that he has not received; and, (3) respondents have failed to demonstrate a compelling government interest in detaining Petitioner without a bond hearing. *See Duarte Escobar*, 807 F. Supp. 3d at 581–84 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

### D.    The Proper Remedy for this Violation is to Provide Mr. Avelar Ramos with a Bond Hearing During Which Respondents Maintain the Burden of Proof

Mr. Avelar Ramos argues that "ordering a [§] 1226(a) bond hearing . . . would not properly redress the statutory and constitutional violations present in this matter," and that his immediate release is the only proper remedy. (ECF No. 6, at 16–17.)  And if the Court orders Respondents to provide Petitioner only with a bond hearing, Mr. Avelar Ramos argues that the Court should order that Respondents "bear the burden of establishing by clear and convincing evidence that Petitioner poses a danger or flight risk" during that hearing. (ECF No. 6, at 18.)  In their response as incorporated from the briefing in *Duarte Escobar*, Respondents assert that a bond hearing is the only appropriate remedy and that at a bond hearing, Mr. Avelar Ramos should bear the burden of establishing whether he is a flight risk or a danger. (*Duarte Escobar*,

10

ECF No. 18, at 28–29.)

For the reasons articulated below, the Court will order Respondents to provide Mr. Avelar Ramos with a bond hearing, rather than immediate release. But Respondents will bear the burden of establishing whether Petitioner is a danger or a flight risk at that hearing.

### 1.    Mr. Avelar Ramos is Entitled to a Bond Hearing Rather than Immediate Release

Petitioner correctly notes that "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" to that of Mr. Avelar Ramos. (ECF No. 6 ¶ 47 (quoting *Moctezuma v. Henkey*, No. 1:25-cv-00741, 2026 WL 18809, at \*5 (D. Idaho Jan. 2, 2026) (collecting cases)).) But the Court declines to follow these other courts for three reasons.

First, ordering a bond hearing allows the Court to tailor its remedy to the specific injury alleged by Petitioner. 28 U.S.C. § 2243 provides that when addressing a petition for a writ of habeas corpus, the Court "shall . . . dispose of the matter as law and justice require." "Release from detention is the 'typical remedy' for 'unlawful executive detention.'" *Parada Cruz v. Noem, et al*, 2:26-cv-1112, 2026 WL 555038, at \*5 (E.D.N.Y. Feb. 27, 2026) (quoting *Munaf v. Green*, 553 U.S. 674, 693 (2008)). But § 2241 petitions "also provide[] for equitable remedies beyond release from custody." *Darwich v. Kemerling*, No. 1:25-cv-1162, 2026 WL 170801, at \*8 (D. Md. Jan. 22, 2026). Indeed, "the federal habeas statute was long ago amended from a previous version that only authorized release from custody to the current version authorizing courts to 'dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243). Here, "law and justice require" redressing Mr. Avelar Ramos' specific injury, namely the deprivation of his access to a bond hearing. Ordering Respondents to provide Petitioner with such a hearing redresses that specific injury. *See, e.g.*, *Ren v. Castro, et al.*, No. 2:26-cv-46, 2026 WL 524118, at \*6 (D.N.M. Feb. 25, 2026) (finding that a bond hearing, rather than

immediate release, was the appropriate remedy because "an individualized bond hearing would provide [the] [p]etitioner with the process he is due under the statute"); *Maldonado v. Baker*, No. 25-cv-3084, 2025 WL 2968042, at *10 (D. Md. Oct. 21, 2025) ("The proper remedy is to order [r]espondents to provide [the petitioner] with the full process due under § 1226(a), which includes a bond hearing before an immigration judge."); *Lopez v. Trump*, No. 2:25-cv-863, 2025 WL 3264151, at *6 (D. Vt. Nov. 17, 2025) ("The injury in this case is that [the petitioner] has not been provided an opportunity to have a bond hearing in immigration court, as required by § 1226(a). The appropriate relief is therefore to provide her with such a hearing.").

Second, providing Mr. Avelar Ramos with a bond hearing aligns with the statutory scheme. Congress and the Department of Homeland Security, in enacting § 1226 and promulgating its implementing regulations, have determined that an Immigration Judge is best situated to make a determination about whether an alien is a potential danger to the community or is a flight risk. Ordering immediate release would undermine that scheme. *See Maldonado*, 2025 WL 2968042, at *10 ("While the record before the [c]ourt does not show [the petitioner] to be either dangerous or a flight risk, under the applicable statute and regulations, an immigration judge, not a federal district court, is designated to make such determinations."); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025) ("[T]he Immigration Court is in the best position to evaluate [the] [p]etitioner's risk of non-appearance and dangerousness.").

Finally, courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit that have ordered immediate release of similar petitioners have often done so after taking note of a failure by immigration officials to comply with earlier court orders. *See, e.g., Briceno Solano v. Mason, et al.*, —F. Supp. 3d—, 2026 WL 311624, at *20 (S.D.W. Va. 2026) (noting that the court "ha[d] no faith that the Government would comply with an order to hold a bond

12

hearing" based on nationwide failures by ICE to comply with court orders and a sworn affidavit from a former ICE counsel identifying the same failures by ICE); *Roshniashvili v. Allen, et al.*, No. 2:26-cv-93, 2026 WL 446657, at *8 n.9 (S.D.W. Va. Feb. 17, 2026) (noting that during a hearing, "[c]ounsel for the Government was unable to provide information and indicated he was not aware of immigration courts granting bond"). Other courts have been confronted with petitioners who have been detained, released, and re-detained by immigration officials. *See Aroca v. Mason*, —F. Supp. 3d—, 2026 WL 357872, at *17 (S.D.W. Va. 2026) ("Having once detained and released [the] [p]etitioners under § 1226(a), the Government cannot now retroactively recast them as arriving 'alien[s] seeking admission.'").

To date, no such circumstance has presented itself to this Court.  The Court has ordered Respondents to provide bond hearings to habeas petitioners at least seven times, and Respondents have provided the Court with notices on multiple occasions indicating that petitioners have either received bond or have been denied bond after a substantive hearing on the merits of a bond determination. *See, e.g.*, *Duarte Escobar*, No. 3:25-cv-758, ECF No. 25 (E.D. Va. 2025) (indicating a grant of bond of $5,000); *Contreras Perez v. Noem, et al.*, No. 25-cv-882, ECF No. 9 (E.D. Va. 2025) (indicating a grant of bond of $1,500); *Espinoza Camacho v. Paul Perry, et al.*, No. 26-cv-76, ECF No. 12 (E.D. Va. 2026) (indicating denial of bond where petitioner was deemed a danger and flight risk).  Nor has Mr. Avelar Ramos alleged that he has been detained by ICE on several occasions.  Citing a variety of publicly-available news articles, Petitioner argues "[t]he immigration court system has seemingly been transformed into a body that is structurally incapable of upholding Petitioner's statutory and constitutional rights."  (ECF No. 6 ¶¶ 56–58.)  But on the present record, the Court must find that a bond hearing is sufficient to redress Petitioner's injury. *See Hernandez v. Baltazar*, No. 26-cv-0524, 2026 WL 507518, at

*4 (D. Colo. Feb. 24, 2026) ("To date, however, the undersigned has not yet encountered such failure to adhere to the rule of law on the part of the Government."). The Court will therefore order Respondents to provide Petitioner with a bond hearing rather than order his immediate release.

        2.       **During Mr. Avelar Ramos' Bond Hearing, Respondents Will Bear the Burden of Establishing Whether Mr. Avelar Ramos Poses a Danger to the Community or Whether he is a Flight Risk**

Mr. Avelar Ramos asserts that in any bond hearing ordered by the Court, Respondents must "bear the burden of establishing by clear and convincing evidence that Petitioner poses a danger or flight risk." (ECF No. 6, at 18.) Section 1226 is silent regarding the burden of proof.

Petitioner correctly notes that courts around the country have ordered immigration officials to bear the burden of making a showing at court-ordered bond hearings regarding whether an alien is dangerous or a flight risk. (ECF No. 6, at 18 (citing *Lopez-Arevolo v. Ripa*, 801 F. Supp. 3d 668, 688 (W.D. Tex. 2025) ("[A]n overwhelming consensus [] of courts granting immigration detainees' habeas petitions have placed the burden on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk.") (quotation omitted)).) In their response as incorporated from the briefing in *Duarte Escobar*, Respondents assert that "[t]here is no warrant to adopt a novel burden-shifting framework." (*Duarte Escobar*, ECF No. 18, at 28.) The Court disagrees. Due process considerations compel the Court to order Respondents to bear this burden of proof.

Citing *Miranda v. Garland*, Respondents note that "[t]he Fourth Circuit has confirmed that [the] bond procedures outlined in 8 U.S.C. § 1226(a) are constitutional and satisfy due process." (*Duarte Escobar*, ECF No. 18, at 28.) In *Miranda*, the Fourth Circuit vacated a preliminary injunction entered by a district court, which determined that for aliens seeking bond

while subject to detention under § 1226, immigration officials bore the burden of proving by clear and convincing evidence that an alien was either a flight risk or a danger to the community. 34 F.4th 338 (4th Cir. 2022). As described by the *Miranda* court, aliens subject to § 1226 are "afford[ed] . . . three opportunities to seek release from detention." *Id.* at 346. Aliens can seek bond through an initial determination by an immigration officer; then, if denied, they can appeal that decision to an Immigration Judge; then, if denied again, they can appeal that decision to the Board of Immigration Appeals. *Id.* The Fourth Circuit determined that placing the burden on the *alien* throughout these three stages to prove that they were not a danger or a flight risk did not violate those aliens' due process rights. *Id.* at 358–65.

But *Miranda* is not dispositive. As the Fourth Circuit there explained, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 359 (quotation omitted). And the situation in Mr. Avelar Ramos' Amended Petition differs from that at issue in *Miranda*. Unlike the petitioners making a due process challenge in *Miranda*, Mr. Avelar Ramos has been denied access to a bond hearing entirely. The Fourth Circuit determined that the procedures afforded to the petitioners in *Miranda* satisfied due process in part because those petitioners had *three opportunities* to contest immigration officials' bond determinations. *Id.* at 362 ("[A]liens already receive the fundamental features of due process—notice and an opportunity to be heard. The current procedures provide aliens detained by the government three separate opportunities to make their case concerning bond.") (internal citation omitted). Mr. Avelar Ramos, in contrast, has been denied *any* opportunity to seek bond.

The Fourth Circuit likewise noted in *Miranda* that the petitioners' argument that placing the burden of proof on aliens seeking bond violated due process "conflict[ed] with Supreme Court precedent in similar circumstances." *Id.* The *Miranda* court explained that the Supreme

15

Court has, on multiple occasions, affirmed statutory schemes placing the burden on a detainee seeking bond. *Id.* at 359–63. But even these cases are distinguishable; in none of the cases cited by the *Miranda* court did the detainee challenging their detention face a fundamental breakdown of the statutory scheme that ordinarily entitled them to make their case for bond. Petitioner, in contrast, has been denied any opportunity to be heard, unlike the detainees or petitioners cited by the *Miranda* court. *See Pineda-Medrano v. Bondi*, No. 1:25-cv-01870 (AJT), 2025 WL 3472152, at *3 n.5 (E.D. Va. Dec. 3, 2025) ("[N]owhere in [*Miranda*] did the Fourth Circuit hold—explicitly or implicitly—that the failure to comport with the procedures contemplated in section 1226(a), including the provision of a bond determination hearing, would also satisfy due process.").

Ultimately, in addressing Petitioner's due process challenge, the Court must weigh "the probable value, if any, of additional or substitute procedural safeguards" and the "burdens that the additional or substitute procedural requirement would entail" for Respondents. *Mathews*, 424 U.S. at 335. Given Respondents' denial of Mr. Avelar Ramos' entitlement to a bond hearing, the probable value of placing the burden of proof on Respondents is especially high. And the burden on Respondents is low; Respondents are likely aware of Petitioner's personal history, such that making a showing before an Immigration Judge that an alien is a danger or a flight risk will not unduly burden Respondents. Indeed, as this Court has seen on multiple occasions, Respondents have proven capable of making detailed showings of whether an alien is a danger or a flight risk. *See Espinoza Camacho v. Perry, et al.*, No. 26-cv-76, ECF No. 12, at 1–3 (E.D. Va. 2026) (indicating denial of bond where petitioner was deemed a danger and flight risk).

Again, "due process is flexible and calls for such procedural protections as the particular

situation demands." *Miranda*, 34 F.4th at 359 (quotation omitted). Given Respondents' abject denial of Mr. Avelar Ramos' entitlement to a bond hearing, due process calls for additional safeguards to protect that entitlement. Accordingly, the Court will order Respondents to provide Petitioner with a bond hearing, during which Respondents will bear the burden of showing whether Mr. Avelar Ramos is a danger or a flight risk by clear and convincing evidence.

## IV. Conclusion

Because § 1226(a) sets for "the default rule" for detaining and removing aliens "already present in the United States," *Jennings*, 583 U.S. at 202, Petitioner's detention is governed by § 1226(a). Under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community or that he is a flight risk if Respondents seek to continue detaining Mr. Avelar Ramos. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1).[13] Unless and until Respondents meet that burden, Mr. Avelar Ramos' continued detention is unlawful.

---

[13] 8 C.F.R. § 1236.1(d)(1) provides, in relevant part:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority [under § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 1236.1(d)(1).

For the reasons articulated above, the Court will grant Mr. Avelar Ramos' Amended Petition, (ECF No. 6), and order that he be provided a bond hearing with an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

An appropriate Order shall issue.

Date: 3/4/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge